UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH DELLARINGA, | No. 2:15-cv-1221 TLN GGH PS |
| Plaintiff, | |
| v. | ORDER |
| SAN JOAQUIN COUNTY, | |
| Defendant. | |

Plaintiff, proceeding in this action pro se, has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302(21), pursuant to 28 U.S.C. § 636(b)(1).

Plaintiff has submitted an affidavit making the showing required by 28 U.S.C. § 1915(a)(1). Accordingly, the request to proceed in forma pauperis will be granted.

The determination that plaintiff may proceed in forma pauperis does not complete the required inquiry. Pursuant to 28 U.S.C. § 1915(e)(2), the court is directed to dismiss the case at any time if it determines the allegation of poverty is untrue, or if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

1  Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an
2  indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke,
3  490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully
4  pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th
5  Cir. 1989); Franklin, 745 F.2d at 1227.

6       A complaint must contain more than a "formulaic recitation of the elements of a cause of
7  action;" it must contain factual allegations sufficient to "raise a right to relief above the
8  speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).
9  "The pleading must contain something more...than...a statement of facts that merely creates a
10  suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal
11  Practice and Procedure 1216, pp. 235-235 (3d ed. 2004). "[A] complaint must contain sufficient
12  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft
13  v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127
14  S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows
15  the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
16  Id.

17       Pro se pleadings are liberally construed. See Haines v. Kerner, 404 U.S. 519, 520-21, 92
18  S. Ct. 594, 595-96 (1972); Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988).
19  Unless it is clear that no amendment can cure the defects of a complaint, a pro se plaintiff
20  proceeding in forma pauperis is entitled to notice and an opportunity to amend before dismissal.
21  See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987); Franklin, 745 F.2d at 1230.

22       The complaint asserts that plaintiff's Social Security Disability benefits were directly
23  deposited into a closed account due to a typographical error in the bank account number. Plaintiff
24  alleges that he tried to rectify this problem with Mr. Steel, an individual working for San Joaquin
25  County ("County"); however, this individual was verbally abusive to him, telling him that he was
26  not entitled to any County benefits and because plaintiff had not acted in a timely manner, Mr.
27  Steel was going to ensure that plaintiff receive nothing. (ECF No. 1 at 5.) When plaintiff asked
28  for a reasonable accommodation so that he would not have to drive to Stockton in order to obtain

1  children's eligibility, Mr. Steel "went wild, asking if what ever was wrong with my brain or my
2  head stopping me from driving to Washing Street in Stockton." (Id. at 6.) Plaintiff further claims
3  that he encountered numerous problems with his HUD sponsored housing, including deplorable
4  conditions and that he was wrongfully evicted.
5        Plaintiff alleges the following violations: perjury, offering false evidence, destroying
6  evidence, false report of a crime, false report of emergency, dissuading a witness, coercion, 42
7  U.S.C. § 1983, "the Penel Code," (id. at 7), forgery, "receipt of federal benefits on [plaintiff's]
8  behalf," applying for grants, benefits and deductions with knowledge or consent, (id. at 9) denial
9  of various requests for accommodation in violation of the "Dissability Access Law," denial of
10 peaceful enjoyment, refusing to accept rent check and then eviction, denial of right to grievance
11 and hearing, various violations by the San Joaquin County Housing Authority in regard to HUD
12 issued housing, (id. at 10-13), and denial of constitutional rights, including lack of legal
13 representation and reasonable accommodation under the ADA for court proceedings relating to an
14 unlawful detainer action, (id. at 12, 14-18). Plaintiff presents a laundry list of statutory citations
15 which he claims the Housing Authority violated: Civil Rights Act, Titles VIII and VI, Section
16 504 of the Rehabilitation Act, Equal Credit Opportunity Act, 42 U.S.C. §§ 1982, 1978, 3611,
17 Section 527 of the National Housing Act, 24 C.F.R. 105(A), 965.405, 965.502(b), Electronic
18 Communications Privacy Act, and 18 U.S.C. §§ 2706, 3121. (Id. at 12-13.)
19       It appears that plaintiff's complaints can be summed up into two parts, the denial of
20 assistance benefits related to Social Security Disability, and its aftermath; and the failure to make
21 housing habitable, and eviction from HUD related housing and the procedure leading up to it.
22       The complaint is defective in several respects. First, the factual allegations made against
23 Mr. Steel, a non-party, appear to be limited to verbal abuse only. Plaintiff does not allege how
24 this individual committed perjury, or any of the aforementioned violations. Although plaintiff
25 states that he has all the crimes and violations recorded and seeks to admit the recording into
26 evidence, plaintiff is advised that all of the allegations must be set forth in an amended complaint,
27 and that recordings and other matters outside the amended complaint will not be considered at the
28 present time. See Block v. Snohomish County, 2015 WL 4164821, *3 (W.D. Wash. July 8, 2015)

(court generally cannot consider evidence beyond four corners of complaint; however, it may rely on document referenced by complaint if it is central to party's claims and its authenticity is not questioned).

Next, plaintiff's allegation for violations of 42 U.S.C. § 1983 against the County of San Joaquin, based in part on Mr. Steel's actions, are problematic. The Civil Rights Act provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Section 1983 is a vehicle whereby plaintiffs can challenge actions by government officials. It is not a separate source of substantive rights. Tatum v. Moody, 768 F.3d 806, 814 (9th Cir. 2014).

The U.S. Supreme Court has held that local governmental entities, e.g., cities, counties, and local officers sued in their official capacity, are "persons" for purposes of section 1983, rendering them directly liable for constitutional violations if carried out pursuant to local policies or customs. McMillian v. Monroe County, 520 U.S. 781, 784-785, 117 S.Ct. 1734 (1997); Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690-692, 98 S.Ct. 2018 (1978). Therefore, the County may properly be considered a person under section 1983.

Nevertheless, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691. "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or

1  vicarious liability will not attach under § 1983." <u>Collins v. City of Harker Heights</u>, 503 U.S. 115,
2  123, 112 S.Ct. 1061 (1992) (original emphasis), citing <u>Monell</u>, 436 U.S. at 694-695.  Thus, "a
3  local government may not be sued under § 1983 for an injury inflicted solely by its employees or
4  agents.  Instead, it is when execution of a government's policy or custom, whether made by its
5  lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts
6  the injury that the government as an entity is responsible under § 1983." <u>Monell</u>, at 694.  A local
7  governmental entity may also "be liable if it had a policy or custom of failing to train its
8  employees and that failure to train caused the constitutional violation.  In particular ... the
9  inadequate training of police officers could be characterized as the cause of the constitutional tort
10 if-and only if-the failure to train amounted to 'deliberate indifference' to the rights of persons
11 with whom the police come into contact." <u>Collins</u>, 503 U.S. at 123-124 (fn.omitted), citing
12 <u>Canton v. Harris</u>, 489 U.S. 378, 387, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

13       "[L]ocal governments, like any other § 1983 'person,' ... may be sued for constitutional
14 deprivations visited pursuant to governmental 'custom' even though such a custom has not
15 received formal approval through the body's official decisionmaking channels." <u>Monell</u>, 436 U.S.
16 at 690-91.  "[P]laintiff must allege that the action inflicting injury flowed from either an explicitly
17 adopted or a tacitly authorized city policy. <i>Ibid.</i>; <u>Harris v. City of Roseburg</u>, 664 F.2d 1121,
18 1130, 1338 (9th Cir.1981) ("'Official policy' within the meaning of <u>Monell</u> [encompasses
19 situations] where a municipality 'impliedly or tacitly authorized, approved, or encouraged' illegal
20 conduct by its police officers.'") (quoting <u>Turpin v. Mailet</u>, 619 F.2d 196, 201 (2nd Cir.), cert.
21 denied, 449 U.S. 1016, 101 S.Ct. 577 (1980))." <u>Gibson v. U.S.</u>, 781 F.2d 1334, 1337-1338 (9th
22 Cir.1986); <u>see</u> <u>also</u>, <u>Ortez v. Washington Cty.</u>, 88 F.3d 804, 811 (9th Cir.1996).  "Proof of a
23 single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>,
24 unless proof of the incident includes proof that it was caused by an existing, unconstitutional
25 municipal policy, which policy can be attributed to a municipal policymaker.  Otherwise the
26 existence of the unconstitutional policy, and its origin, must be separately proved.  But where the
27 policy relied upon is not itself unconstitutional, considerably more proof than the single incident
28 will be necessary in every case to establish both the requisite fault on the part of the municipality,

1  and the causal connection between the 'policy' and the constitutional deprivation." City of

2  Oklahoma City v. Tuttle, 471 U.S. 808, 823-824, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985).

3       As currently pled, plaintiff has alleged only isolated incidents involving the County's

4  employee, Mr. Steel.  Plaintiff has not alleged that the County itself had a policy to discriminate,

5  or that it was even aware of Mr. Steel's alleged actions.  "A municipality cannot be held liable

6  solely because it employs a tortfeasor."  Monell, 436 U.S. at 691; Navarro v. Block, 72 F.3d 712,

7  714 (9th Cir.1995).

8       Instead, to allege a claim against a municipality, plaintiff must allege enough "factual

9  content" to show: "(1) that [the plaintiff] possessed a constitutional right of which he was

10 deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate

11 indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force

12 behind the constitutional violation.'"  Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir.

13 1996), quoting Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir.1992), City of Canton v. Harris,

14 489 U.S. 378, 389–91, 109 S.Ct. 1197, 1205 (1989).

15      The current complaint fails to state a claim against the County under § 1983 because there

16 are no facts set forth which "might plausibly suggest" that any Constitutional violations were

17 effected pursuant to a County policy, custom or practice that was the moving force or cause of

18 plaintiff's injuries.  See AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th

19 Cir.2012) (applying Iqbal's pleading standards to Monell claims).

20      Furthermore, plaintiff does not state which part of the Constitution he believes was

21 violated.  As section 1983 is merely a vehicle with which to bring substantive rights under the

22 Constitution, plaintiff must specify which portion of the Constitution is being violated.  If

23 plaintiff intends to allege that he was discriminated against based on his disability under the Equal

24 Protection Clause, he must clearly state so.

25      The complaint also contains claims under the Americans with Disabilities Act (ADA) and

26 the Rehabilitation Act (RA).  Title II of the ADA was modeled after the Rehabilitation Act itself.

27 Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir.2001).  Therefore, the elements of the

28 ADA and RA claim are functionally the same.  For that reason, the ADA and RA claims are

1 addressed together.  To state a claim under the Rehabilitation Act, plaintiff must show that: "(1)
2 he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was
3 denied the benefits of the program solely by reason of his disability; and (4) the program receives
4 federal financial assistance."  Duvall, 260 F.3d at 1135.

5 To state a claim under Title II of the ADA, the plaintiff must allege four elements: (1) the
6 plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in
7 or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was
8 either excluded from participation in or denied the benefits by the public entity; and (4) such
9 exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability.
10 Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1021 (9th Cir.2010); McGary v. City of
11 Portland, 386 F.3d 1259, 1265 (9th Cir.2004).

12 Although the complaint implies some of the aforementioned elements, the amended
13 complaint must allege all of them succinctly.  Most importantly, devoid from the complaint is the
14 allegation that plaintiff was denied benefits *because of* his disability under the ADA or the RA.
15 On amendment, each element of each Act upon which plaintiff intends to rely must be clearly
16 stated.

17 Plaintiff's second main grievance is in regard to HUD related housing, from which he was
18 apparently evicted.  He relies on 24 C.F.R. § 966.4 in support of his claim.  This Code of Federal
19 Regulations section contains many subsections, so it is unclear upon which one plaintiff relies.  It
20 is possible that plaintiff intends to rely on the termination clause which provides that the Public
21 Housing Authority may terminate a tenancy only for:

> (i) Serious or repeated violation of material terms of the lease, such as the following:
>
> (A) Failure to make payments due under the lease;
>
> (B) Failure to fulfill household obligations, as described in paragraph (f) of this section;
>
> (ii) Being over the income limit for the program, as provided in 24 CFR 960.261.
>
> (iii) Other good cause. Other good cause includes, but is not limited to, the following:

7

>   (A) Criminal activity or alcohol abuse as provided in paragraph (l)(5) of this section;
>
>   (B) Discovery after admission of facts that made the tenant ineligible;
>
>   (C) Discovery of material false statements or fraud by the tenant in connection with an application for assistance or with reexamination of income;
>
>   (D) Failure of a family member to comply with service requirement provisions of part 960, subpart F, of this chapter—as grounds only for non-renewal of the lease and termination of tenancy at the end of the twelve-month lease term; and
>
>   (E) Failure to accept the PHA's offer of a lease revision to an existing lease: that is on a form adopted by the PHA in accordance with § 966.3; with written notice of the offer of the revision at least 60 calendar days before the lease revision is scheduled to take effect; and with the offer specifying a reasonable time limit within that period for acceptance by the family.

24 C.F.R. § 966.4(l)(2).  See also 42 U.S.C. § 1437a.

On amendment, plaintiff shall specify which part of § 966.4 supports his claims and the asserted reason for his eviction.  He must assert how the eviction process violated this section and/or his constitutional rights.

If plaintiff separately and additionally intends to allege that he was evicted from public housing because of a disability under the ADA, he would have to allege facts showing his disability was the reason for the eviction.  See McGary, 386 F.3d 1259 at 1265 (listing requirements to state a claim under the ADA).

Plaintiff has no standing to pursue alleged violations of 18 U.S.C. §§ 2706, 3121. Criminal statutes do not provide a private right of action. See, e.g., Ellis v. City of San Diego, 176 F.3d 1183, 1189 (9th Cir.1999) (district court properly dismissed claims brought under the California Penal Code because the statutes do not create enforceable individual rights).  It is also well established that private actions are maintainable under federal criminal statutes in only very limited circumstances.  Cort v. Ash, 422 U.S. 66, 79, 95 S.Ct. 2080, 2088 (1975); Bass Angler Sportsman Soc. v. United States Steel Corp., 324 F.Supp. 412, 415 (S.D.Ala.1971), citing United States v. Claflin, 97 U.S. 546, (1878); United States v. Jourden, 193 F. 986 (9th Cir.1912). Therefore, plaintiff may not pursue such claims under these federal criminal statutes or they will

be dismissed.

Additionally, although plaintiff refers to "the other defendant," (ECF No. 1 at 7), he names San Joaquin County as the only defendant. Any failure in this regard may be cured on amendment.

Moreover, the complaint alleges various violations without any supporting facts. For example, on one of the pages of the complaint, plaintiff provides a laundry list of six claims for forgery without any allegations supporting them. On the same page, plaintiff's conclusory statement, "receipt of federal benefits on my behalf," is stated without any context or explanation of the who, what, when, where, or why of this claim. (ECF No. 1 at 9.) There are many other such conclusory allegations; however, the court has limited resources and will not address each and every one. On amendment, plaintiff must provide a short and plain statement of the claim showing entitlement to relief. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a

general rule, an amended complaint supersedes the original complaint.  See <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1474 (9th Cir.1997), *overruled in part on other grounds*, <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  Once plaintiff files an amended complaint, the original pleading no longer serves an operative function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Good cause appearing, IT IS ORDERED that:

1.  Plaintiff's request for leave to proceed in forma pauperis is granted.

2.  The complaint is dismissed for the reasons discussed above, with leave to file an amended complaint within twenty-eight (28) days from the date of service of this Order.  The amended complaint must comply with the requirements of the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number assigned this case and must be labeled "Amended Complaint;" plaintiff must file an original and two copies of the amended complaint; failure to file an amended complaint will result in a recommendation that this action be dismissed.

Dated: July 18, 2015

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:076/Dellaringa1221.amd